UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NARVIEZ V. ALEXANDER,

Plaintiff,

v.

JAMES KEENER, *et al.*,

Defendants.

3:12-cv-00535-MMD-VPC

REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

February 13, 2014

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion to dismiss for failure to exhaust and/or in the alternative motion for summary judgment (#73).[1]  Plaintiff opposed (#81) and defendants replied (#82).  Also before the court is plaintiff's motion for partial summary judgment (#53).  Defendants opposed (#79), and plaintiff replied (#83).[2]  The court has thoroughly reviewed the record and recommends that defendants' motion to dismiss for failure to exhaust and/or in the alternative motion for summary judgment (#73) be granted and that plaintiff's motion for partial summary judgment (#53) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Narviez V. Alexander ("plaintiff") is incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#38).  Plaintiff brings his *pro se*

---

[1] Refers to the court's docket numbers.
[2] Several other motions by both sides are pending before the court, including plaintiff's motion for temporary restraining order and preliminary injunctive relief (#s 10 & 11).

amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that the following Lovelock Correctional Center ("LCC") personnel:  Warden Robert LeGrand ("LeGrand"); Assistant Warden of Operations Sandie ("Sandie"); Prison Investigator James Keener ("Keener"); Caseworkers Dwayne Baze ("Baze"), Larry Hegge ("Hegge"), and Eleanor Emmanuel ("Emmanuel"); Sergeants Terry Lindberg ("Lindberg") and Gentry; and Offender Management Administrator Quentin Byrne ("Byrne") violated his First, Eighth and Fourteenth Amendment rights.  *Id.*  Plaintiff alleges the following:  count I:  Hegge, Byrne and Emmanuel were deliberately indifferent to a serious risk to plaintiff's safety in violation of his Eighth Amendment rights; count II:  Baze, Byrne, Sandie and LeGrand violated his Fourteenth Amendment due process rights when they arbitrarily detained plaintiff in administrative segregation; count III:   Keener, Lindberg, LeGrand, and Sandie participated in plaintiff's disciplinary proceedings and violated his due process rights when he was found guilty based on no evidence; and count IV:  all defendants violated plaintiff's First and Fourteenth Amendment rights when they retaliated against him for filing this lawsuit by transferring him from Northern Nevada Correctional Center ("NNCC") to Ely State Prison ("ESP") instead of returning him to LCC after he received medical treatment at NNCC. *Id.* at 5-6.

Plaintiff alleges the following:  in December 2011, while at LCC, he was moved into a cell with inmate James Greene ("Greene"). *Id.* at 7.  Greene informed plaintiff that he kept two prison-made knives in the lining of his sweat pants and hid them in the yard during lockdowns.  Plaintiff sent a kite to Hegge on December 22, 2011, requesting a bed move because he was "incompatible" with his cellmate and wanted to remain disciplinary-free.  Hegge's only response was to tell plaintiff to use the correct form and to find a solution.  Plaintiff went to see Hegge and explained that Greene had contraband and was involved in misconduct.  Hegge told plaintiff that he would not get into trouble for anything Greene did unless it happened in their cell and told plaintiff to figure out a "bed

move solution" to present to Hegge.  Plaintiff submitted a "notice" to Byrne on December 27, 2011, informing Byrne that plaintiff had requested a bed move in order to remain "disciplinary-free and trouble-free."  In Byrne's January 13, 2012 response he stated:  "No, if you want to move you should find a solution.  If you are in fear for your safety contact staff."  Plaintiff, "at that time, . . .was not in fear for his safety."   Meanwhile, on January 10, plaintiff had sent an inmate request form to Emmanuel, stating again that he was trying to remain disciplinary-free and out of trouble and that "[m]y caseworker has offered no assistance in this matter because no one wants to live with my cellmate."  Plaintiff received a response the next day that read:  "You need to find your own solution and submit to unit caseworker."  *Id.* at 7-8.

Thereafter, an officer "accidentally" told Greene that plaintiff had written kites complaining about their incompatibility.  The two inmates then had several verbal confrontations.  On January 19, after a "violent argument," Greene brandished a prison-made weapon—a red object with a sharpened end—and threatened to kill plaintiff if he did not leave the cell, which plaintiff did.  That night, plaintiff wrote an anonymous kite to the LCC investigator stating that Greene had threatened plaintiff with a knife that he hid in the lining of his sweatpants.  *Id.* at 9.

In response, the next day, officers conducted a clothed search of Greene and four other inmates after they had been loitering behind the bleachers on the yard.  The search yielded nothing. Officers then closed the yard and searched it with metal detectors.  Officers discovered two red toothbrushes with handles sharpened to a point buried in the dirt under the bleachers.  Greene was then questioned; he "re-direct[ed] the allegations to protect himself" and "was permitted to insinuate that the plaintiff only wrote the kite because he wanted a bed move."  Without an interview, plaintiff was then escorted to administrative segregation pending investigation.  On January 25, 2012, Baze conducted the "72-hour due-process hearing" but failed to give plaintiff written or verbal notice of

"exculpatory evidentiary incident reports" prepared by several correctional officers.  Without any credible information, Baze recommended that plaintiff remain in administrative segregation pending investigation, and Byrne, Sandie and LeGrand agreed.  *Id.* at 9-10.

Plaintiff sent several kites requesting to be interviewed and prepared a sworn declaration of his version of events.  Baze and Keener interviewed plaintiff on March 14, 2012, at which time he gave Keener a copy of his declaration.  On March 22, 2012, Keener prepared a notice of charges charging that plaintiff had made the weapons and had hidden them on the yard in order to manipulate a bed move.  Lindberg conducted the disciplinary hearing, at which plaintiff argued that the investigative report contained only opinion and assumption.  While not discussed at the hearing, plaintiff later learned though discovery for this lawsuit that Keener, Lindberg and Sandie "withheld" staff incident reports that indicated that Greene had been loitering in the bleacher area where the weapons were found.  Plaintiff was found guilty and sanctioned to one hundred eighty days disciplinary segregation.  The disciplinary conviction raised plaintiff's risk factor score to seventeen points, which requires "close custody," and, while no full classification committee hearing was held, plaintiff was designated for transfer to maximum-custody ESP.  LeGrand denied his disciplinary appeal.  *Id.* at 11-14.

Plaintiff was transferred to NNCC on June 21, 2012 for medical treatment on a "treat and return" to LCC.  However, when his treatment concluded, "as a direct result of the disciplinary conviction, and in retaliation for the instant civil litigation," plaintiff was instead re-classified and transferred to ESP.  *Id.* at 14-15.  Plaintiff seeks money damages and declaratory and injunctive relief.  *Id.* at 20.

Defendants first ask the court to grant their unenumerated 12(b) motion to dismiss on the grounds that plaintiff failed to properly exhaust his administrative remedies with respect to any of

his four claims (#73, pp. 8-10). Defendants next ask the court, in the alternative, to grant summary judgment in their favor. *Id.* at 1. They argue that no genuine issue of material fact exists and that they are thus entitled to judgment as a matter of law. *Id.* Plaintiff moves the court for partial summary judgment (#53). He argues that no genuine issue of material fact exists as to counts I-III; and therefore, he is entitled to judgment as a matter of law on those counts. *Id.*

## II. DISCUSSION & ANALYSIS

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

A.     **Legal Standards**

1.     **42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

2.     **Exhaustion**

Defendants brings the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that plaintiff failed to properly exhaust his administrative remedies (#73, pp. 8-10).

Failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), and the defendant bears the burden of proving that the plaintiff has not exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading. *Jones*, 549 U.S. at 216.

Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. If the court ultimately finds that the plaintiff has not exhausted his nonjudicial remedies, the court should dismiss his claims without prejudice. *Wyatt*, 315 F.3d at 1119-20, *as noted in O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 n.3 (9th Cir. 1988).

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion requirement is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citation omitted). Administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (citing *Booth v. C.O. Churner*, 532 U.S. 731, 740 n.5 (2001)). Even when the prisoner seeks remedies that are not available in administrative proceedings—notably money damages—exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the

Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance; rather the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion" means that the prisoner must use "all steps the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Id.* (citation omitted) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

"[A]pplicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. NDOC's grievance procedure is governed by Administrative Regulation ("AR") 740.[3] AR 740 provides that an inmate may use the grievance procedure to "resolve addressable inmate claims including . . . personal property, property damage, disciplinary appeals, personal injuries, any other tort claim or civil rights claim relating to conditions of institutional life." AR 740.03(1). NDOC's grievance process has three levels of review: (1) an informal level grievance, which "should be reviewed, investigated and responded to by the inmate's assigned Caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "should be reviewed, investigated and responded to by the Warden;" and (3) a second level formal grievance, which "should be reviewed and responded to" by either the appropriate Deputy Director, the Offender Management Administrator, or the Medical Director. AR 740.05-07.

---

[3] NDOC AR's are available to the public via the internet and may be accessed at www.doc.nv/sites/doc/files/pdf/AR740.pdf.

Once an inmate submits an informal grievance, NDOC logs the grievance into a tracking system. AR 740.01(5). The caseworker assigned to the grievance will provide the inmate with a response within forty-five days, unless additional time is needed to conduct further investigation. AR 740.05(12). If the inmate is not satisfied by the caseworker's response, he may appeal the decision within five days by filing a first level formal grievance.[4] AR 740.06. The Warden will provide the inmate with a response within forty-five days. AR 740.06(4). If the inmate is not satisfied with the Warden's response, he may appeal the decision within five days by filing a second level formal grievance. *Id.* The appropriate NDOC official will provide the inmate with a response within sixty days. AR 740.07(3).

If an inmate's grievance does not comply with procedural guidelines, the grievance is returned to the inmate with instructions for proper filing. AR 740.09(3). Upon completion of the grievance process, an inmate may pursue civil rights litigation in federal court.

Accordingly, as "proper exhaustion of administrative remedies," requires an inmate to comply with the agency's deadlines and "other critical procedural rules . . . ." an inmate in NDOC custody must comply with AR 740 by timely completing the three-level grievance procedure in order to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 84, 90.

### 3. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving

---

[4] At the informal level of review, if the caseworker's response is overdue, the inmate may proceed to the next level. *Id.*

party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. Analysis**

**1. Exhaustion of Count IV**

*Grievance Log No. 2006-29-60631*

In count IV, plaintiff alleges that, at the conclusion of his medical treatment, "as a direct result of his disciplinary conviction" and in retaliation for filing this lawsuit, defendants transferred plaintiff from NNCC to ESP instead of returning him to LCC (#38, p. 6).  On April 28, 2013, plaintiff submitted an informal grievance stating that NDOC Offender Management and LCC violated his constitutional rights when they transferred him to ESP instead of back to LCC (#73, Ex. M, pp. 11-16).[5]  He apparently received the response to his informal grievance on about June 10, 2013.  *Id.* at 11.  Plaintiff filed his first level grievance on June 13, 2013.  *Id.* at 4-10.  Plaintiff filed his second level grievance on July 25, 2013.  *Id.* at 2.  On August 5, 2013, plaintiff filed his amended complaint in this action, adding the retaliation claim—the subject of this grievance—as count IV (#38).  Thereafter, on September 10, 2013, plaintiff received the response to his second level grievance (#73, Ex. M, p. 2).

Defendants argue that plaintiff has failed to satisfy the PLRA's mandatory requirement to exhaust this claim prior to filing suit, or, in this case, filing his amended complaint in order to add this claim (#73, p. 10).  In his opposition, plaintiff appears to concede that he failed to exhaust this claim prior to filing his amended complaint, but argues that "if this court has the power to grant a stay, then it surely has the authority to proceed on an action that has clearly been exhausted, no matter when the amended complaint was filed" (#80, p. 23).  He cites a United States Supreme Court case, *Jones v. Bock*, in support of this contention.  549 U.S. 199 (2007).

---

[5] Authenticated by the declaration of ESP Correctional Casework Specialist III and custodian of records Michael Fletcher at Ex. Q.

Based on the court's review of plaintiff's grievance history, plaintiff failed to properly exhaust his claims in count IV of his amended complaint. *Woodford*, 548 U.S. at 84; *Porter*, 534 U.S. at 524; AR 740. Exhaustion is required *prior* to filing suit. *Booth*, 532 U.S. at 741. Plaintiff filed his amended complaint adding this claim before he completed the grievance process (#38). The second level response was timely (#73, Ex. M, p. 2). The *Jones v. Bock* case cited by plaintiff is inapposite; there, the U.S. Supreme Court held that exhaustion is an affirmative defense under the PLRA, and therefore, an inmate is not required to plead or specially demonstrate exhaustion in his complaint. 549 U.S. at 216.[6] Accordingly, the court concludes that plaintiff failed to properly exhaust his administrative remedies as to count IV, and therefore, defendants' motion to dismiss should be granted in part as to count IV.

While defendants argue that plaintiff has similarly failed to exhaust his claims in counts I – III, plaintiff has plausibly demonstrated that he was transferred from LCC right after he submitted his second level grievances on these claims (#81, pp. 21-23). He states that he never knew that those grievances apparently were not received by LCC staff, and he had no way to follow up from another institution. He contends that he learned that it is defendants' position that those second level grievances were never received only when he requested his grievance file in connection with this litigation. *Id.* Accordingly, the court determines that defendants' motion to dismiss should be denied in part as to counts I – III.

## 2. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment merely sets forth the allegations from his amended complaint again and argues that no factual disputes exist with respect to counts I-III (#53).

---

[6] The Court also held that inmates' § 1983 actions were not automatically rendered noncompliant with the PLRA exhaustion requirement by fact that not all defendants named in complaints had been named in previous administrative grievances, and that an inmate's compliance with the PLRA exhaustion requirement as to some, but not all, claims does not warrant dismissal of the entire action. *Id.* at 219-224.

Defendants oppose, largely based on their motion to dismiss and/or in the alternative motion for summary judgment (#s 79, 73).  Plaintiff's motion—in which he sets forth his allegations in counts I-III and then pronounces that he has thus demonstrated that he is entitled to summary judgment—utterly fails to demonstrate the absence of genuine issues of material facts.  Moreover, as discussed below, defendants are entitled to summary judgment in their favor on counts I-III.  Accordingly, the court recommends that plaintiff's motion for partial summary judgment (#53) be denied.

### 3.  Defendants' Motion for Summary Judgment

#### a.  Count I:  Deliberate Indifference to a Serious Safety Risk in Violation of the Eighth Amendment

In count I, plaintiff alleges that Hegge, Byrne and Emmanuel acted with deliberate indifferent to a serious risk to plaintiff's safety in violation of his Eighth Amendment rights, when he asked for a cell move and they responded by telling him that he must follow proper procedures and that he should bring them a proposed move (#38, p. 5).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Under the Eighth Amendment, "[p]rison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 200 2; *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (*per curiam*); *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). *Id.* at 219, 222-224.

Defendants argue that plaintiff cannot succeed on his Eighth Amendment claim that Hegge, Byrne and Emmanuel were deliberately indifferent to a serious risk to his safety in violation of his Eighth Amendment rights because there is no evidence that defendants knew of and disregarded any such serious risk (#73, p. 13). They contend that the evidence demonstrates the following: plaintiff submitted multiple kites requesting a cell move; however, he would not give a reason other than "incompatibility" with his cellmate (#73, Ex. A, p. 3). Plaintiff never expressed concern for his safety (*id.* at 1-3; plaintiff's kite at Ex. O;[7] #53, Ex. A, pp. 1-3). Plaintiff told defendants that he wanted to remain discipline-free, but when Hegge directly asked plaintiff if he feared for his safety he said no (#73, Ex. A, p. 2; *see also* #53, Ex. A, pp. 3-4). Defendants told him to go through the proper process and "find a solution" by identifying another inmate with whom he could cell (*see e.g.*, #73, Ex. O). They further advised him that if he feared for his safety he should contact staff.[8] *Id.* Even after plaintiff's cellmate allegedly threatened him, plaintiff still did not go to staff and express his fear; instead, he submitted an anonymous kite (#38, pp. 7-9).

---

[7] Authenticated by the declaration of LCC Associate Warden Quentin Byrne at Ex. P.
[8] The court observes that plaintiff attached as an exhibit to his motion for partial summary judgment verified interrogatory responses by Hegge that would further support some of defendants' contentions (#53, Ex. B, pp. 50-51). In any event, as discussed below, in light of plaintiff's specific allegations and the kites provided by both sides, the court concludes that no genuine dispute of material fact exists as to whether defendants knew of a serious threat to plaintiff's safety.

In fact, in plaintiff's amended complaint, he admits that Byrne told him: "if you want to move you should find a solution. If you are in fear for your safety contact staff." *Id.* at 8. Plaintiff further states that "*at that time*, plaintiff was *not* in fear for his safety, [as he had not yet been threatened with a knife]." *Id.* (court's emphasis). Based on plaintiff's own allegations in his amended complaint as well as in all his pleadings and papers in this action, he never gave staff any indication that he feared for his safety because he did *not* fear for his safety. *Id.* at 7-9. He only ever cited "incompatibility" and the desire to remain disciplinary-free as the basis for his request (*id.*; *see also* #38, Ex. A, plaintiff's sworn declaration in support of his amended complaint). He next states that after inmate Greene brandished a prison-made knife, instead of going to defendants or any other staff, plaintiff submitted an *anonymous* kite (*id.*; #81, pp. 4-6; #53, pp. 43-45, 51, 83). In the kites provided by both plaintiff and defendants, plaintiff only ever complains that he and Greene are incompatible (*see, e.g.*, #53, Ex. A, Ex. O). Based on the facts as alleged by plaintiff, as well as the kites provided, defendants cannot be held liable for constitutional violations simply because they did not make the leap to assume that "incompatibility" equated to a fear for plaintiff's safety—particularly when plaintiff admits that it did not. Plaintiff is incorrect that "defendants [sic] argument that [plaintiff] 'never expressed concern for his safety' is immaterial to the outcome of this case" (#81, p. 28). Plaintiff cannot demonstrate that a genuine issue of material fact exists as to whether the count I defendants knew of a serious threat to his safety. Accordingly, he cannot succeed on his claim that they acted with deliberate indifference, and defendants should be granted summary judgment on count I.

**b. Count II**

Plaintiff alleges that defendants Baze, Byrne, Sandie and LeGrand violated his Fourteenth Amendment due process rights when they arbitrarily detained him in administrative segregation in violation of NDOC Administrative Regulation ("AR") 507.

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981). To prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a protected liberty interest. After meeting this threshold requirement, the plaintiff must then demonstrate that the defendants failed to provide the process due. *See Wolff*, 418 U.S. at 556-57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The Due Process Clause does not confer a liberty interest in freedom from state action taken "within the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Thus, the Supreme Court has found that the Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population. *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."). However, in certain circumstances, states may create liberty interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 483-84. For example, in *Sandin*, the Court found that a

prisoner may have a liberty interest in avoiding transfer to particular conditions of confinement if the transfer "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by *Sandin*, 515 U.S. 472; *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by *Sandin*, 515 U.S. 472. The Supreme Court has stated that five days is a reasonable time for post-placement review. *See Hewitt*, 459 U.S. at 477. Before the review, the prisoner must receive some notice of the charges and be given an opportunity to respond. *See id.* at 476; *Mendoza*, 960 F.2d at 1430-31; *Toussaint*, 801 F.2d at 1100. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1100-01 (citations omitted). Due process also "does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." *Id.* After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9; *Toussaint*, 801 F.2d at 1101. Courts have not specifically defined "periodically." Annual review of the placement is insufficient; *see Toussaint*, 801 F.2d at 1101, but a court may not impose a 90-day review period where prison officials have suggested a 120-day review period, *see Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1991).

Defendants argue that plaintiff's due process rights were satisfied and that he received the review he was due both when they placed him in administrative segregation and periodically while he remained in administrative segregation.   Defendants assert the following:   they initiated an investigation in response to plaintiff's anonymous kite (#73, p. 3).   Investigator Keener reviewed several handwriting samples to try to ascertain the kite's author and determined that the handwriting was similar to plaintiff's (#73, Ex. E).   Plaintiff was then moved to administrative segregation and received notice of his administrative segregation hearing on January 20, 2012 (#73, p. 14; Ex. N, p. 7 – Administrative Segregation Notice of Classification Hearing).   An informal evidentiary review occurred on January 25, 2012, where it was determined that plaintiff should be placed in administrative segregation for the safety and security of the institution (#73, Ex. N, Administrative Segregation Classification Results Notice, p. 6; Ex. C, excerpt from plaintiff's Case Note printout report, p. 15).[9]   Plaintiff received subsequent evidentiary reviews every thirty days while the investigation was pending (#73, Ex. C, pp. 14-18; Ex. N, pp. 1-5).   Based on the investigation, plaintiff was charged and then found guilty (#73, p. 15).

Plaintiff now argues that the notice he received, on its face, clearly failed to provide notice as to the reason for an investigation, which deprived him of the ability to prepare a defense (#81, pp. 32-33).   He also contends that defendants did not rely on "credible evidence" when they initially placed him in administrative segregation, or when they periodically reviewed such placement.   *Id.* at 32-35.

Plaintiff misstates the notice and evidentiary requirements that are required to satisfy due process with respect to administrative segregation.   "An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with

_____

[9] Also authenticated by the declaration of Michael Fletcher at Ex. Q.

deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476.  Plaintiff now points out that the administrative segregation notice of classification form itself merely notifies plaintiff that officials planned to place him in administrative segregation for "safety & security of the institution – pending investigation" (#73, Ex. N, p. 7).

However, plaintiff's authenticated case notes indicate:

> information [received] in an anonymous "snitch" kite stating that "Baby J" had brandished a prison made weapon and was hiding it on the phase one yard . . . . after further investigation it was found that [plaintiff] authored the kite and is suspected of manufacturing weapons.  Inmate claims that the prison made weapons are not his . . . .

(#73, Ex. C, p. 15).  Plaintiff claims in his opposition that the case notes are incorrect and that he was not given notice of the specific concerns (#81, p. 33, n.11).  However, plaintiff, who has included numerous declarations in support of his pleadings and motions in this case, never states in a sworn declaration that he had no notice of the nature of the safety and security concerns.  Moreover, his amended complaint belies this assertion.  First, he states that, on January 20, 2012, defendants "escorted and detained [plaintiff] in a segregation housing unit pending investigation for the possession of two (2) prison-made knives found on the phase one yard" (#38, p. 10).  He alleges there that defendants failed to provide "exculpatory evidentiary incident reports" to plaintiff at his administrative segregation hearing.  *Id.*  He further alleges that he immediately began sending numerous requests and grievances seeking to be interviewed about the events, and that when no one interviewed him, on February 20, 2012, he prepared a sworn declaration of the facts setting forth his version of events.  *Id.* at 10-11.  Finally, the declaration that plaintiff attaches in support of his amended complaint attests to the version of events he sets forth in the amended complaint: defendants "ordered me detained and placed in segregated confinement pending investigation for prison made weapons . . . ." (#38, Ex. A, p. 25).

Similarly, plaintiff's motion for partial summary judgment first argues that he was not provided with the "exculpatory evidentiary incident reports" at his initial administrative segregation hearing (#53, p. 6). Later in the motion plaintiff, plaintiff argues that the notice of hearing was deficient on its face, and that he did not have notice of the nature of the investigation so as to be able to provide a defense. *Id.* at 21.

The court concludes that the notice that plaintiff received satisfied the "some notice" requirement for administrative segregation. *See Hewitt*, 459 U.S. at 476. The majority of plaintiff's voluminous filings in this complaint do not allege that he did not have adequate notice so as to prepare for the administrative segregation hearing. An informal, nonadversary evidentiary review is sufficient to safeguard an inmate's due process rights. He received such review within five days of placement in administrative segregation. Just prior to his placement in administrative segregation, plaintiff had engaged in a lengthy campaign to secure a bed move. Then, on January 19, 2012, he submitted an anonymous kite that his cellmate had prison-made weapons. The next day, the prison yard was closed and searched, the weapons were found, plaintiff's cellmate was interviewed, and finally, plaintiff was placed in administrative segregation. The only allegations that plaintiff has supported (by his declaration) are that he was placed in administrative segregation pending an investigation into whether he made weapons. Now, in his opposition to the motion to dismiss, he offers only his conclusory, unsupported statement that he did not have actual notice of the nature of the institutional concerns. Therefore, the court concludes that, not only does the hearing notice provide some notice (safety and security) of the nature of the investigation, but that, on these factual allegations, it impossibly stretches credulity for plaintiff to now assert that he did not have some notice as to why he was placed in administrative segregation.

Defendants are also correct that an allegation that prison officials failed to follow an NDOC or institutional regulation does not necessarily implicate plaintiff's constitutional rights; the constitutional inquiry here is whether plaintiff was afforded the process he was due pursuant to the Fourteenth Amendment. *See, e.g., Pratt v. Minnix*, 2012 WL 359658 *4 (D. Nev. 2012) (not reported) (reversed and remanded in part on other grounds in *Pratt v. Deeds*, 538 Fed.Appx. 771 (9th Cir. 2013)). Defendants have provided evidence that plaintiff received notice of the administrative segregation hearing, an informal nonadversary evidentiary review, and periodic review of his placement in administrative segregation. Especially in light of both the deference to be accorded prison officials and the lower due process threshold for placement in administrative segregation, the court concludes that defendants have demonstrated the absence of a genuine issue of material fact as to whether plaintiff's due process rights were violated when he was placed in administrative segregation pending the investigation. Accordingly, summary judgment should be granted in favor of defendants on count II.

**c. Count III**

Plaintiff alleges that defendants Keener, Lindberg, LeGrand, and Sandie violated his Fourteenth Amendment due process rights through their participation in his disciplinary proceedings (#38, p. 5). He claims that defendants found him guilty of making weapons based on unreliable evidence, that they withheld exculpatory evidence, and that Keener lied in his investigative report. *Id.* at 13-14.

With respect to Fourteenth Amendment due process requirements for disciplinary proceedings, when a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the

disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974); *see also Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003); *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Hill*, 472 U.S. at 455; *see also Bruce v. Ylst*, 351 F.3d 1283, 1287-1288 (9th Cir. 2003); *Toussaint v. McCarthy*, 926 F.2d 800, 802-803 (9th Cir. 1991); *Bostic v. Carlson*, 884 F.2d 1267-1269-70 (9th Cir. 1989); *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *see especially Burnsworth v. Gunderson*, 179 F.3d 771, 774-75 (9th Cir. 1999) (where there is no evidence of guilt, it may be unnecessary to demonstrate existence of a liberty interest). *But see Hines v. Gomez*, 108 F.3d 265, 268-269 (9th Cir. 1997) (holding that this standard does not apply to original rules violation report where prisoner alleges the report is false).

A prisoner does not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Rather, the Fourteenth Amendment provides that a prisoner "has a right not to be deprived of a protected liberty interest without due process of law." *Id.* As long as a prisoner receives proper procedural due process, as outlined in *Wolff*, a claim based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim. *Id.;*

*Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984). However, an inmate can allege he was not afforded the procedural protections required by the Due Process Clause in connection with the issuance and hearing of the false disciplinary report. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1401-02 (7th Cir.1994).

In *Sandin v. Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. *Id.* Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. *Id.* In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Although a prisoner whose liberties are at stake must be given the opportunity to present evidence and call witnesses at a disciplinary hearing, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), no due process claim lies where an alleged *Wolff* violation deprives the prisoner of no cognizable liberty interest, *Sandin*, 515 U.S. at 483–84.

Defendants assert the following: plaintiff received written notice of the charges more than twenty-four hours before the hearing (#73, Ex. D, Notice of Charges).[10] At the preliminary hearing, plaintiff indicated that he wanted two witnesses (#73, Ex. E), but at the disciplinary hearing he indicated that he no longer wished to call any witnesses (#73, Ex. F).[11] Plaintiff stated that he understood the charges against him at the disciplinary hearing. *Id.* Defendant Lindberg, the disciplinary hearing officer, gave plaintiff a written statement of the evidence he relied on and the reasons he took disciplinary action (#73, Ex.'s D, E, F). The statement indicated that the hearing

---

[10] Exhibits D, E and F to defendants' motion to dismiss have been authenticated by the declaration Michael Fletcher at Ex. Q.

[11] The court has listened to the recording of plaintiff's disciplinary hearing, which defendants provided under seal pursuant to this court's order (#s 55, 59).

officer relied on defendant Keener's investigative report, which detailed the investigation that occurred after the anonymous kite was submitted. *Id.* Keener relayed that he looked at several handwriting samples to try to identify the kite's author; he determined the handwriting on the kite was similar to plaintiff's handwriting; during his March 1, 2012 in-person interview, plaintiff admitted to Keener that he wrote the kite because he was having problems with his cellmate; and at the interview, plaintiff produced a handwritten "affidavit" in which he described the weapons found during the search without any prior information (#73, Ex. E). Keener stated that he thus concluded that plaintiff manufactured both the weapons and the accompanying story in order to manipulate a bed move. *Id.* Based on this evidence, plaintiff was found guilty of the disciplinary charges (#73, Ex. F).

Plaintiff argues that Keener's investigative report misrepresented his interview with plaintiff (#81, p. 11). In particular, he claims that Keener's report indicates that plaintiff admitted to writing the kite because he was having problems with his cellmate, while plaintiff states that what he actually told Keener is that he wrote the kite because inmate Greene brandished a knife and threatened to kill him. *Id.* at 10-11. Plaintiff also claims that defendants violated AR 707, which governs the disciplinary proceedings, in the following ways: Keener's report impermissibly contained his opinions; defendants failed to provide exculpatory incident reports; and defendants failed to identify staff witnesses to the violation. *Id.* at 11.

Again, the allegation that prison officials failed to follow an NDOC AR does not necessarily implicate plaintiff's constitutional rights; the constitutional inquiry here is whether plaintiff was afforded the process he was due pursuant to the Fourteenth Amendment. *See, e.g., Pratt*, 2012 WL 359658 *4. Second, the allegation of false disciplinary charges, standing alone, also does not implicate constitutional rights, if the disciplinary proceedings satisfied due process. *Sprouse*, 870

F.2d at 452.   Third, plaintiff's insistence that "exculpatory" reports that provided "indisputable" evidence were withheld is misplaced (#81, p. 42).   Plaintiff complains that he did not have access to staff reports that indicated that inmate Greene was searched while on the yard, that he was near the bleachers, and that the weapons were eventually found buried under the bleachers (*id.*; *see also* Investigation Detail Report[12]).   While potentially helpful to plaintiff, this clearly is not dispositive evidence.   Further, plaintiff admits that he wrote the anonymous kite, and he had the opportunity to give his version of events when he was interviewed by Keener.

The record reveals that plaintiff received a written notice of charges at least twenty-four hours before the disciplinary hearing that included the charges and a description of the evidence and that he had an opportunity to present documentary evidence and call witnesses, which he declined (#73, Ex.'s D, E, F).   Keener's investigation, which included an interview with plaintiff and plaintiff's admission that he submitted the anonymous kite, led Keener to conclude that plaintiff planted the prison-made knives in order to manipulate a bed move (*see, e.g.*, #73, Ex. D).   This report certainly constitutes "some evidence" and supports Lindberg's guilty finding at the disciplinary hearing.   *Hill*, 472 U.S. at 455.   Therefore, the court concludes that plaintiff was afforded due process during his disciplinary proceedings.   As defendants' have demonstrated the absence of a genuine issue of material fact, the court recommends that summary judgment be granted in their favor as to count III.

### 4. Plaintiff's Motion for Sanctions and Motion to Strike

On November 7, 2013, plaintiff filed a motion for sanctions (#67).   He argues that defendants presented false allegations in their supplemental opposition to his motion for preliminary injunctive relief when they argued that plaintiff was transferred to ESP to serve a disciplinary sentence, and not

---

[12] This report was filed under seal pursuant to this court's order (#55).

for any retaliatory reason.  *Id.* at 4-5.  In their opposition to the motion for sanctions, defendants stated that they merely erred, and that when plaintiff pointed out their mistake in a letter dated October 26, 2013, they promptly filed an errata correcting the error (#72, p. 2).  Defendants attach plaintiff's letter, which demands that defendants correct the misstatement within ten days (#72, Ex. A).  On November 1, 2013, defendants filed an errata, which acknowledged this misstatement in the supplemental opposition to plaintiff's motion for temporary restraining order and preliminary injunction:  "The Department held a hearing on the charges against plaintiff, and as a result of his finding of guilt, he was transferred to ESP to serve his disciplinary charges sentence"  (#64, pp. 2-3).  They requested that the statement be corrected to:  "The Department held a hearing on the charges against plaintiff, and as a result of his finding of guilt of this charge and taking into account a previous violation (making plaintiff a two time medium offender), he was transferred to ESP."  *Id.*

Federal Rule of Civil Procedure 11(b) provides that an attorney is subject to sanctions under this rule if she or he presents a "pleading, written motion, or other paper" to the court that is for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," "the claims, defenses, and other legal contentions are [not] warranted by existing law," "the factual contentions [do not] have evidentiary support," or if "denials of factual contentions are [not] warranted."  Rule 11(c)(2), the "safe harbor" provision, requires a party requesting sanctions to serve a copy of the motion for sanctions on the opposing party at least twenty-one days prior to filing the motion.  Fed.R.Civ.P. 11(c)(2).

Here, plaintiff sent the letter dated October 26, 2013, requesting that defendants correct the misstatement (#72, Ex. A).  However, he did not serve a copy of his motion for sanctions on defendants (*see* #67, 72).  Moreover, defendants promptly corrected their misstatement by filing an

errata on November 1, 2013 (#64). Thus, plaintiff's motion for sanctions is baseless, and the court recommends that it be denied.

Finally, on December 4, 2013 plaintiff filed a motion to strike (#77). However, this filing is a duplicate of the motion to strike filed on December 2, 2013 (#75), which the court denied (#78). Accordingly, the second motion to strike (#77) should be denied.

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that plaintiff has failed to exhaust his administrative remedies with respect to count IV. Thus, defendants' motion to dismiss should be granted in part as to count IV. Next, the court concludes that there are no genuine issues of material fact for trial with respect to counts I, II and III; thus, defendants' motion for summary judgment should be granted on those counts. Accordingly, as plaintiff has necessarily failed to demonstrate that he is entitled to summary judgment on any counts, his motion for partial summary judgment should be denied.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss and/or in the alternative for summary judgment (#73) be **GRANTED** as follows:

motion to dismiss count IV should be **GRANTED**;

summary judgment on counts I, II, and III should be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for partial summary judgment (#53) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the following motions filed by plaintiff be **DENIED** as moot:  motion for temporary restraining order and preliminary injunction (#s 10 and 11); motion in limine (#80); and motion for evidentiary hearing and telephonic conference (#86).

**IT IS FURTHER RECOMMENDED** that defendants' motion to stay re motion in limine (#84) be **DENIED** as moot.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for sanctions (#67) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion to strike (#77) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:**  February 13, 2014

UNITED STATES MAGISTRATE JUDGE